**Jeffrey A. Rothman**
Attorney at Law
305 Broadway, Suite 100
New York, NY 10007
Tel.: (212) 227-2980; Cell: (516) 455-6873
Fax: (212) 591-6343
rothman.jeffrey@gmail.com

March 14, 2021

<u>By ECF (and by email) To:</u>
The Honorable Cathy Seibel
United States District Court Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>Lisa Mazochi v. The City of Beacon, et al.</u>, 21 Civ. 913 (CS)

Dear Judge Seibel:

      I am counsel for Plaintiff in the above-captioned action. Pursuant to the Court's Order of February 25, 2021 (docket # 6), I write in response to the City of Beacon's ("Beacon") pre-motion conference letter of February 25, 2021 (docket # 5) and in anticipation of the telephonic conference scheduled for March 22, 2021 at 2:30 p.m.

**<u>Plaintiff's Federal Claims</u>**

      Beacon is incorrect that the arrest warrant for another person provided probable cause in the case at bar. As an initial matter, Beacon appears to concede (as it must) that the warrant based upon which its officers arrested Plaintiff was in fact not for her, but instead for another person. The probable cause analysis is an analysis of objective reasonableness, and an arresting officer's good faith alone will not avail her if she acted unreasonably. *See*, e.g., <u>Bernard v. United States</u>, 25 F.3d 98, 102 (2d Cir. 1994) ("The Government concedes that Bernard was misidentified, but probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably <u>and</u> in good faith in relying on that information.") (emphasis added). In the case at bar not only was Plaintiff's name spelled differently in two places from the person on the warrant (Plaintiff is Mazochi, and the warrant was for a person named Mazzocchi). More than a somewhat similar name is required to establish probable cause. *See,* e.g., <u>Vazquez-Mentado v. Buitron</u>, 2013 WL 2318636, *4-6 (N.D.N.Y. May 28, 2013); <u>Montoya v. New Mexico Dep't of Public Safety</u>, 2011 WL 13286159, *7 (D.N.M. Jan. 5, 2011) ("A jury could find that . . . [a] name discrepancy would have vitiated probable cause."). In addition, in the case at bar Plaintiff's date of birth was different from the person on the warrant, and the Plaintiff's appearance was additionally starkly different from the person sought in the warrant.

Further, the Beacon officers who arrested Plaintiff did not even bother to check their file (which contained the pertinent – and plainly different – pedigree information for the person who was actually wanted) until they had already arrested Plaintiff, humiliated her, and deprived her of her liberty for a half hour. Plaintiff was at that time inside of Beacon's courthouse, having already cleared the courthouse's security checks, and was waiting cooperatively to appear before its court to answer a traffic ticket. There was no exigency that required the officers to arrest her before they retrieved the file (that resided in the same building, in their police station) that would demonstrate definitively that she was not the person sought by the warrant. *See*, e.g., Mitchell v. City of N.Y., 841 F.3d 72, 78 (2d Cir. 2016) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (quoting Colon v. City of N.Y., 60 N.Y.2d 78 (N.Y. 1983). Plaintiff even offered to go with the officers to the police station so that they would not parade her in handcuffs through the courtroom, but the officers still decided to arrest her without even a wisp of probable cause.

Beacon is also incorrect that its officers conducted only a Terry stop. Plaintiff was handcuffed and brought to the Beacon police station that was underneath the courtroom, and was clearly under a full custodial arrest. *See*, e.g., United States v. Newton, 369 F.3d 659, 676 (2d Cir. 2004) ("Handcuffs are generally recognized as a hallmark of a formal arrest .... Thus, a reasonable person finding himself placed in handcuffs by the police would ordinarily conclude that his detention would not necessarily be temporary or brief and that his movements were now totally under the control of the police - in other words, that he was restrained to a degree normally associated with formal arrest and, therefore, in custody.") (collecting cases).

Beacon's qualified immunity argument also fails. It was clearly established (indeed, a bedrock principle of law) that probable cause was necessary before arresting someone, and that its officers were not permitted to just arrest Plaintiff based on a surmise that maybe the file in their office would show that she was in fact the subject of a warrant. *See*, e.g., Vasquez v. Maloney, 2021 U.S. App. LEXIS 6356, at *13 (2d Cir. Mar. 4, 2021) (denying qualified immunity for an unlawful Terry stop based on a clear violation of the requirements of Terry v. Ohio).

Plaintiff has also plausibly alleged her Monell claims, which include, inter alia, that Beacon had *de facto* policies, practices, customs and/or usages of making arrests based upon warrants (or upon non-warrant requests from its own or other police departments) in which the person arrested has some similarity in name or other pedigree information with the person sought, but the arrests are made without conducting a responsible inquiry to see if the person sought by the warrant is in fact the person arrested. *See*, e.g., Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002) (upholding Monell verdict against municipality under the Fourth and Fourteenth Amendments for arrest of plaintiff on an arrest warrant for his twin brother, and holding that "[i]n light of the importance of [plaintiff's] liberty interest, the significant risk of deprivation of that interest through the City's warrant procedures, and the minimum burden to the City of instituting readily available procedures for decreasing the risk of erroneous detention, the procedures afforded by the City to [plaintiff] failed to provide him due process under the Fourteenth Amendment."). Plaintiff's allegations concerning Beacon's failures to properly train its employees are also sufficient to overcome a motion to dismiss on the pleadings. *See*, e.g., Holmes v. City of NY, 2016 U.S.Dist.LEXIS 27945, at *18-19 (S.D.N.Y. 2016).

**Plaintiff's State Law Claims**

If an arrest is determined to be unlawful, any touching or use of force, including handcuffing, of a plaintiff constitutes an assault and battery, regardless of whether it would be deemed reasonable if applied during a lawful arrest. *See,* Johnson v. Suffolk County Police Dep't, 245 A.D.2d 340, 665 N.Y.S.2d 440 (2d Dep't 1997) (holding that a police officer committed a battery when he touched the plaintiff during an unlawful arrest); *see also*, Budgar v. State of New York, 98 Misc.2d 588, 414 N.Y.S.2d 463, 466 (1979) (finding that "since the arrest was unlawful, a technical assault and battery occurred when the claimant was handcuffed and forcibly placed in the State police car").

Plaintiff's negligence claims, and negligent supervision / training claims are brought in the alternative pursuant to Fed.R.Civ.P. 8 (a) (3).

Plaintiff also states valid claims for constitutional tort under the New York State. For example, under the due process clause of the New York State Constitution (Article I, § 6), a court may impose higher standards than those held to be necessary by the United States Supreme Court under the corresponding Federal constitutional provision. People v. Isaacson, 44 N.Y.2d 511 (1978); Sharrock v Dell Buick-Cadillac, 45 N.Y.2d 152, 158-160 (1978). The NY State Constitution is also more protective than the Fourth Amendment when it comes to unconstitutional seizures. *See*, Evans v. Solomon, 681 F. Supp. 2d 233, 255 *et seq.* (E.D.N.Y. 2010).

Concerning Plaintiff's claims for trespass upon the person, this phraseology is sometimes used somewhat synonymously with common law battery. *See*, e.g., Garzione v. Vassar Bros. Hospital, 36 A.D.2d 390, 392 (1st Dept. 1971); Tobias v. Kesseler, 18 A.D.2d 1094, 239 N.Y.S.2d 554 (2nd Dept. 1963); Burns v. City of New York, 6 A.D.2d 30, 36, 174 N.Y.S.2d 192, 199 (1st Dept. 1958).

Plaintiff has also sufficiently pled her claims for intentional infliction of emotional distress. Plaintiff has pled that she suffered intense embarrassment, nervousness, and fear as a result of the actions of Beacon's officers, whose cavalier behavior with regard to her liberty and dignity constitute extreme and outrageous conduct. The Second Circuit has also held that some New York Courts "have sustained some emotional distress claims, against a motion to dismiss, that appear to allege conduct that is somewhat less than 'utterly intolerable in a civilized society.'" Bender v. City of New York, 78 F.3d 787, 791 (2nd Cir. 1996).

As for punitive damages, they are only asserted against the as-yet unidentified Beacon officers, who will be amended into this action once they are identified.

I thank the Court for its consideration in this matter, and look forward to discussing these issues with the Court and opposing counsel on March 22nd.

Respectfully submitted,

/S/

Jeffrey A. Rothman
Attorney for Plaintiff